# UNITED STATES DISTRICT COURT
## for the
### District of New Mexico

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
                                              ) Case No.
11910 Central Ave, Albuquerque, NM 87123 as )
further described in Attachment A             )
                                              )         17 mr 1108

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO
17 DEC 12 PM 4:20
CLERK-ALBUQUERQUE

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A Attached hereto and incorporated herein

located in the _____ District of _____ New Mexico _____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, Attached hereto and incorporated herein

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 287 | False Claims against the Government |

The application is based on these facts:
See affidavit attached hereto and incorporated herein.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Louie Gomez - Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/12/17

_____
*Judge's signature*

City and state: ALBUQUERQUE, NEW MEXICO

Steven C. Yarbrough
*Printed name and title*

## U.S. MAGISTRATE JUDGE

## Affidavit for Search Warrant

I, Louie Gomez, being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Department of Energy (Department), Office of Inspector General (OIG), Office of Investigations (OI), in Albuquerque, New Mexico and have been so employed since May 2016. The Department OIG OI is a Federal agency responsible for conducting criminal investigations involving fraud, waste, and abuse, within the Department, its contractors and subcontractors. I am currently a sworn federal law enforcement officer. Prior to this, I was an Inspector for the Department OIG for three years. I have a Bachelor of Business Administration degree in Accounting from the University of New Mexico and a Master of Accounting degree in Taxation from the University of New Mexico. I am also a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement Training Center located in Glynco, Georgia, where I received training in Criminal Law and Procedures. In my capacity as a Special Agent and Inspector, I have assisted and participated in cases regarding federal crimes.

2.      I am submitting this affidavit in support of an application by the United States of America for the issuance of a search warrant to search the business office of De La Pena, LLC (DLP), located within the Extra Space Storage Office building located at 11910 Central Ave SE, Albuquerque, New Mexico, 87123 ("SUBJECT PROPERTY"), as more particularly described in Attachment A.

### CRIMINAL VIOLATIONS

3.      As set forth in more detail below, there is probable cause to believe that Title 18 U.S.C. § 287 (Making or Presenting False, Fictitious, or Fraudulent Claims), has been violated and evidence of this violation exists at the SUBJECT PROPERTY described in Attachment A, incorporated herein by reference.

### SOURCES OF INFORMATION RELATED IN THIS AFFIDAVIT

4.      I make this affidavit based on personal knowledge and upon information furnished to me by witness testimony, including Sandia National Laboratories (Sandia) employees, by testimony from the subject of the investigation, and other sources. Since this affidavit is being submitted for the limited purpose of establishing probable cause for the issuance of a search warrant, I have not included each and every fact known to me concerning this investigation.

### DETAILS OF INVESTIGATION

5.      Sandia is a national security science research laboratory located in Albuquerque, New Mexico. Sandia applies advanced science and engineering to help our nation and allies detect, repel, defeat, or mitigate national security threats. Sandia also uses its scientific, research and

technological capabilities in the areas of nuclear weapons, defense systems and assessments, energy and climate, and global security.

6. The Department owns Sandia, its facilities, and all equipment used at the laboratories. Sandia is operated and managed by National Technology and Engineering Solutions of Sandia, LLC. (NTESS), a wholly owned subsidiary of Honeywell International, Inc. The NTESS operates Sandia as a prime contractor for the Department's National Nuclear Security Administration (NNSA) and supports numerous federal, state, and local government agencies. The Department fully pays for, through the prime contract with NTESS, any and all expenses that NTESS incurs for its day-to-day operational and equipment needs.

7. Sandia has numerous cleanrooms within its Albuquerque, New Mexico complex. Sandia cleanrooms are used for a variety of scientific matters to include designing and manufacturing mechanical assemblies for systems designed at the national security laboratory, and require certain levels of cleanliness classifications. Accordingly, Sandia cleanrooms demand a higher quality of cleaning then standard janitorial services. The cleanroom classifications are confirmed through air particle count monitoring that test particles in the air with specialized equipment.

8. One of Sandia's cleanrooms is located at their Center for Integrated Nanotechnology (CINT) facility (building 518) in Albuquerque, New Mexico. The CINT is a Department-funded nanoscience research facility that provides users from around the world with access to state of the art expertise and instrumentation in a collaborative, multidisciplinary environment with a focus on nanoscience integration. Users of the CINT cleanroom must be given access to not only enter the CINT building, but also the cleanroom. Access is given to users in the form of a badge, and users must use the badge to swipe into both the building and cleanroom, both of which Sandia monitors.

9. DLP was a subcontractor to Sandia at their Albuquerque, New Mexico site from approximately May 2008 to June 2017. During this time, DLP had three separate contracts with Sandia for air particle count monitoring and cleanroom cleaning services, one of which was for the CINT cleanroom. DLP's contract ended with the CINT cleanroom on February 28, 2017.

10. DLP is owned and operated by BOBBY MARTIN PENA. As the sole employee of DLP, PENA was independently responsible for all requirements listed on DLP's Sandia contracts to include air particle count monitoring and cleaning services for the contracted cleanrooms, amongst other requirements. DLP's contract with the CINT, #1621866, was a firm fixed contract paying one monthly fixed rate of $2,475, for twice-weekly cleaning services. In addition to the twice-weekly cleaning services, DLP was required to provide a monthly particle count monitoring and analysis, with electronic reporting to Sandia.

11. On June 9, 2016, Sandia's Ethics Advisory and Investigative Services contacted the Department OIG to report that DLP, was submitting claims to Sandia for work that was not performed. Specifically, based on Sandia badge swipe records and other inquiries conducted by Sandia, DLP was not performing the required cleaning duties listed in the contract to include air particle count monitoring.

12. From approximately June 2016 to February 2017, the Department OIG OI reviewed Sandia badge swipe data for PENA along with video surveillance for the CINT building. An analysis of this information revealed PENA spent an average of 31 minutes inside the CINT building. In addition, at no time during this period, with the exception of February 2017, did video surveillance show PENA transporting any type of air particle count monitor into or out of the CINT. However, PENA provided air particle monitoring results to Sandia via email, certifying that air particle monitoring was completed for this time period.

13. The Affiant conducted interviews with the CINT cleanroom owner, who stated the CINT cleanroom, which PENA was responsible for cleaning, was approximately 9,000 square feet and should average a minimum of two to three hours of cleaning per visit, which did not include the time to administer air particle count monitoring. It was also stated that an air particle count monitor has never been seen stationed in the cleanroom, nor has PENA been observed bringing a monitor into the building.

14. The CINT cleanroom owner also stated that air particle count monitoring results were not provided by PENA until requests were made from Sandia. On two occasions, PENA provided bulk emailed copies of the air particle monitoring results. On May 27, 2016, PENA provided the first set of results for the time period January 2013 to May 2016, from email, delapenallc@gmail.com. The second email PENA sent was on February 3, 2017, and contained air particle monitoring results from June 2016 to February 2017. The email used on this occasion was bobby@delapenallc.com.

15. Between January 2017 and February 2017, the Affiant conducted physical surveillance of PENA to determine if air particle monitoring's were being completed at the CINT. On only one occasion, February 3, 2017, PENA transported a black suitcase from his vehicle, which is believed to have contained an air particle monitor, into the CINT. The Affiant observed PENA conducting air particle monitoring on this occasion with a machine being pushed on a cart. PENA then transported the black suitcase back to his vehicle after he completed the air particle monitoring. The length of time PENA was inside the CINT during this instance was approximately one hour and twenty eight minutes.

16. On February 3, 2017, at approximately 10:11AM, the Affiant was conducting physical surveillance of PENA at his DLP office located at Extra Space Storage, 11910 Central Ave SE, Albuquerque, NM. During this same time, PENA emailed Sandia personnel the CINT monthly cleanroom air particle count test results for the period of June 2016 through February 2017. Based on the timestamp of the email sent from PENA to Sandia, and in conjunction with the physical surveillance, it is believed PENA used a computer within the SUBJECT PROPERTY to transmit the falsified CINT air particle count test results for June 2016 through January 2017.

17. On February 28, 2017, the Affiant conducted a consensually monitored conversation between PENA and the CINT cleanroom owner. During that conversation, PENA informed the cleanroom owner that he (PENA) transports the air particle count monitor into the cleanroom each time he performs the air particle monitoring, then removes it from the facility after the monitoring is completed. PENA also stated that it takes him approximately 1.5 hours each time he conducts the air particle monitoring in the CINT cleanroom.

18. On July 14, 2017, Department OIG Special Agents (SA), interviewed PENA. During the interview, PENA admitted that he did not conduct required air particle count monitoring's and falsified the test results for the CINT, for approximately two years. PENA also admitted that he falsified the test results he submitted to Sandia via email on February 3, 2017. PENA stated that in approximately January 2017, Sandia requested the monitoring results for the CINT cleanroom. PENA further admitted to using a portable document format (PDF) floorplan of the CINT cleanroom from his personal laptop computer to make up the numbers provided to Sandia. PENA also clarified that he carries his laptop computer everywhere he goes, to include the SUBJECT PROPERTY.

19. Based on an analysis of video surveillance, physical surveillance, Sandia badge swipe data, and the interview with PENA, it appears DLP submitted false air particle count test results to Sandia using his personal laptop computer. This was determined based on air particle monitoring equipment not being taken into, or out of the CINT building by PENA; dates and times of submitted air particle monitoring results not matching Sandia badge swipe data for PENA; the amount of time PENA spent in the CINT contradicted his statement to the CINT cleanroom owner that he dedicates an hour and a half to complete the air particle monitoring's; and PENA admitting to falsifying the air particle monitoring results.

## COMPUTERS AND ELECTRONIC STORAGE

20. As described above and in Attachment B, this application seeks permission to search and seize electronic records that might be found on the SUBJECT PROPERTY, in whatever form they are found. I submit that if a computer or electronic medium is found on the premises, there is probable cause to believe those records will be stored in that computer or electronic medium, for at least the following reasons:

   a. Based on my knowledge and training, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive or deleted. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using readily available forensics tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data.

   b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the hard drive that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

   c. Based on physical surveillance of PENA in conjunction with an email sent by PENA to Sandia, along with PENA's admission to submitting falsified test results, I am aware that PENA's computer equipment was used to generate, store, and submit documents used in the making or presenting false, fictitious, or fraudulent claims. There is reason to believe there is a computer system at the SUBJECT PROPERTY when PENA works out of this location.

Affidavit of Department OIG Special Agent Louie Gomez - Page 4 of 10

21.     Computer storage devices (like hard disks or CD-ROMs) can store the equivalent of millions of pages of information. Additionally, a suspect may try to conceal criminal evidence; he or she might store it in random order with deceptive file names. This may require searching authorities to peruse all the stored data to determine which particular files are evidence or instrumentalities of crime. This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical and invasive to attempt this kind of data search on-site.

22.     In light of these concerns, I hereby request the Court's permission to seize the computer hardware (and associated peripherals) that are believed to contain some, or all of the evidence described in the warrant, and to conduct an off-site search of the hardware for the evidence described.

23.     I recognize that DLP is a functioning company and that a seizure of their computer(s) may have the unintended effect of limiting DLP's ability to provide service to its legitimate customers. In response to these concerns, the agents who execute the search anticipate taking an approach to minimize the inconvenience to DLP's legitimate customers and to minimize the need to seize equipment and data. It is anticipated that, barring unexpected circumstances, this incremental approach will proceed by attempting to create an electronic "image" of those parts of the computer and storage devices that are likely to store the things described in the warrant. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Imaging a computer and storage devices permits the agents to obtain an exact copy of the computer's stored data without actually seizing the computer hardware. The agents or qualified computer experts will then conduct an offsite search for the things described in the warrant from the "mirror image" copy at a later date. If the agents are unsuccessful in creating an image at the SUBJECT PROPERTY, the agents will make every effort to return the computer and any additional storage devices within a reasonable timeframe to DLP.

## CONCLUSION

24.     Based on my training, knowledge, and experience as a Special Agent, on information obtained by myself, and other Special Agents, including interviews of Sandia employees and PENA, along with information set forth above, I believe probable cause exists for the issuance of a search warrant for the premises identified in Attachment A, incorporated hereinto by reference of this affidavit and to search for items listed in Attachment B, incorporated hereinto by reference of this affidavit.

25.     Established through physical surveillance of PENA, the Department OIG OI confirmed that his business office is currently at 11910 Central Ave SE, Albuquerque, New Mexico, 87123. PENA also confirmed that his business, DLP, only had one laptop computer that PENA carries with himself at all times.

26.     Items seized will be considered evidence in the ongoing investigation of violations of Title 18 U.S.C. § 287 (Making or Presenting False, Fictitious, or Fraudulent Claims).

12/12/2017
Date

Louie Gomez
Special Agent
United States Department of Energy
Office of Inspector General

SUBSCRIBED AND SWORN TO before me this 12th day of December, 2017.

United States Magistrate Judge

## ATTACHMENT A

The premises to be searched is the business office of De La Pena, LLC, located within the Extra Space Storage Office building, at 11910 Central Ave SE, Albuquerque, New Mexico, 87123. The office is located inside a multi-unit office building that is a single-level, light colored building with a large blue door awning. The office is located on the south-west corner of the building and can be identified by the "DE LA PENA" sign in a window. This building is connected to a fence that secures storage rooms for the Extra Space Storage facility. Outside of the building, located in the parking lot, is a tall green building sign with the address 11910 on the top of the post. See attached photos incorporated herein by reference.



Affidavit of Department OIG Special Agent Louie Gomez - Page 7 of 10



Affidavit of Department OIG Special Agent Louie Gomez - Page 8 of 10



Affidavit of Department OIG Special Agent Louie Gomez - Page 9 of 10

## ATTACHMENT B

Items to be searched and seized as evidence of a violation of 18 U.S.C. § 287 are as follows:

1. All electronic records relating to violations of 18 U.S.C. § 287 involving DE LA PENA, LLC or BOBBY MARTIN PENA including:
   a) Data related to Sandia National Laboratories (Sandia) contracted work
   b) Data related to air particle monitoring data at Sandia
   c) Invoices to Sandia
   d) Time records
   e) Sandia cleanroom floorplans
   f) Dates and times of work performed at Sandia
   g) Emails related to Sandia

2. Any computers or electronic media (hereinafter, "MEDIA") that were or may have been used as a means to commit the offenses described on the warrant including:
   a) Providing falsified test results in violation of 18 U.S.C. § 287.

3. For any computer hard drive or other MEDIA that is called for by this warrant, or that might contain things otherwise called for by this warrant:
   a) Evidence of user attribution showing who used or owned the MEDIA at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved usernames and passwords, documents, and browsing history;
   b) Passwords, encryption keys, and other access devices that may be necessary to access the MEDIA;
   c) Documentation and manuals that may be necessary to access the MEDIA or to conduct a forensic examination of the MEDIA.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies).